IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

CHRISTIAN L. GILBERT,

                    Plaintiff,

vs.

CHRISTOPHER M. JOHNSON, and
CORDELL & CORDELL, P.C., a
Missouri corporation,

                    Defendants.

4:22-CV-3248

MEMORANDUM AND ORDER

The plaintiff, Christian Gilbert, is suing his former attorney, Christopher Johnson, and his lawyer's firm, Cordell & Cordell, for legal malpractice. This matter comes before the Court on two motions. First is Gilbert's objection (filing 17) to the Magistrate Judge's findings and recommendation (filing 16) recommending that the Court deny his motion for remand (filing 11). The second is the defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6). Filing 14.

## I. BACKGROUND

Gilbert is a resident of Iowa. Filing 1-2 at 4. He retained Johnson when he was a defendant in a paternity action in the District Court of Lancaster County, Nebraska. Filing 1-2 at 5. The mother of Gilbert's minor child sought to establish Gilbert's paternity, and to be awarded custody of the child and child support. Filing 1-2 at 4; *see also Kee v. Gilbert*, 992 N.W.2d 486, 490 (Neb. Ct. App. 2023). Gilbert filed a similar action in an Iowa state court, seeking custody of the child. Filing 1-2 at 5. The Iowa court declined to exercise jurisdiction under the standards laid out in the Uniform Child Custody

Jurisdiction and Enforcement Act (UCCJEA), implemented in both Iowa and Nebraska. *See* Iowa Code § 598B.101 *et seq.*; Neb. Rev. Stat. § 43-1226 *et seq.*

Johnson filed an unsuccessful motion to dismiss for lack of *subject matter* jurisdiction in the Nebraska case on Gilbert's behalf, but Johnson did not contest the Nebraska court's *personal* jurisdiction over Gilbert. Filing 1-2 at 5; *see Kee*, 992 N.W.2d at 491. Gilbert alleges that Johnson negligently waived Gilbert's personal jurisdiction argument by filing the unsuccessful motion. Filing 1-2 at 5-6. Gilbert also alleges that Johnson failed to file and serve a responsive pleading to the complaint. Filing 1-2 at 7.

The state court entered a temporary custody order pending the outcome of the paternity action. *See Kee*, 992 N.W.2d at 491. The mother was awarded custody, while Gilbert was allowed visitation every other weekend. *Id.* Gilbert alleges that he never agreed to this temporary custody agreement, despite the statements in the state court's order. Filing 1-2 at 7. Rather than visitation, Gilbert wanted custody of the child. Johnson allegedly advised Gilbert that "there was no way" the Nebraska court would award custody of the child to Gilbert, "and that the visitation set forth in the 'Temporary Order' was the most the court would award him." Filing 1-2 at 7. Gilbert alleges this advisement was either negligently or knowingly false, and Johnson failed to advocate for Gilbert's interest in the custody of his child. Filing 1-2 at 7.

Johnson moved to withdraw from representing Gilbert. His motion indicated that Gilbert did not adhere to the terms of the representation agreement, and that Gilbert was not expected to comply with the agreement in the foreseeable future. Filing 1-2 at 8. Gilbert alleges these statements were false and disparaging, and that Johnson violated his duties of loyalty and confidentiality by explaining the reasons for his withdrawal. Gilbert alleges

2

this motion "created in the court a negative impression of" Gilbert, which affected the state court's custody and support determinations. Filing 1-2 at 8.

Gilbert retained new counsel. Ultimately, the court awarded sole custody to the child's mother, subject to specified parenting time by Gilbert. *Kee*, 992 N.W.2d at 492. The state court also ordered Gilbert to pay $535 per month in prospective child support, and $300 per month in retroactive child support. *Id.* And Gilbert was ordered to pay $30,000 of the mother's attorney's fees and costs. *Id.* Gilbert alleges that but for Johnson's negligence in representing him, Gilbert would have not been ordered to pay child support and attorney fees, and he would have been awarded more than visitation with his child. He sued Johnson in the District Court of Lancaster County, Nebraska, and the defendants removed the case to federal court. *See* filing 1.

## II. MOTION TO REMAND

The Court has reviewed the parties' briefs and the record *de novo*, pursuant to 28 U.S.C. § 636(b)(1)(C).[1] On its *de novo* review, the Court agrees with the Magistrate Judge. The Court will adopt the Magistrate Judge's findings and recommendation (filing 16). Gilbert's objection (filing 17) is

---

[1] The Court recognizes that there is a split of authority regarding whether a Magistrate Judge's decision on a motion to remand is dispositive or nondispositive for purposes of review by an Art. III judge. *See Banbury v. Omnitrition Int'l, Inc.*, 818 F. Supp. 276, 279 (D. Minn. 1993). But many courts have concluded that such an order is effectively dispositive. *See Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 763-64 (5th Cir. 2016); *Flam v. Flam*, 788 F.3d 1043, 1046-48 (9th Cir. 2015); *Williams v. Beemiller, Inc.*, 527 F.3d 259, 266 (2d Cir. 2008); *Vogel v. U.S. Office Prod. Co.*, 258 F.3d 509, 517-18 (6th Cir. 2001); *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995-96 (10th Cir. 2000); *In re U.S. Healthcare*, 159 F.3d 142, 145-46 (3d Cir. 1998). Out of caution, the Court has reviewed the Magistrate Judge's findings and recommendation *de novo*.

overruled, and the motion to remand (filing 11) will be denied for the reasons explained by the Magistrate Judge.

### III. MOTION TO DISMISS

#### STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. While the Court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id*. at 679.

#### DEFENDANTS' MOTION

Gilbert alleges that Johnson committed professional negligence and breached his fiduciary duties, for which Cordell & Cordell are vicariously liable, when he:

    (a)    Failed to move to dismiss the claims against Gilbert for lack of personal jurisdiction, or advise Gilbert of that possibility;

    (b)    Failed to seek temporary or full custody, and incorrectly advised Gilbert that the state court would not award more than temporary visitation;

4

(c)    Failed to file a responsive pleading, and made allegedly disparaging statements about Gilbert in a motion to withdraw; and

(d)    Charged unreasonable fees for inadequate work.

Filing 1-2 at 9-10.

To prevail on a claim for legal malpractice, a plaintiff must prove (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that the neglect resulted in and was the proximate cause of loss to the plaintiff. *Kozal v. Snyder*, 978 N.W.2d 174, 179 (Neb. 2022) (citing *Young v. Govier & Milone, L.P.,* 835 N.W.2d 684 (Neb. 2013)). When a plaintiff asserts attorney malpractice at the trial level in a civil case, the plaintiff must show that he would have been successful in the underlying action but for the attorney's negligence. *Bowers v. Dougherty*, 615 N.W.2d 449, 457 (Neb. 2000) (citing *Eno v. Watkins*, 429 N.W.2d 371, 372 (Neb. 1988)).

A breach of a fiduciary duty is akin to malpractice under Nebraska law, and thus requires similar elements: (1) the existence of a fiduciary duty of the defendant to the plaintiff, (2) a breach of that duty, and (3) the breach resulted in and was the proximate cause of some loss to the plaintiff. *McFadden Ranch, Inc. v. McFadden*, 807 N.W.2d 785, 789 (Neb. Ct. App. 2011) (citing *Comm. First State Bank v. Olsen*, 587 N.W.2d 364, 368 (Neb. 1998) ("[A]ny professional misconduct or any unreasonable lack of skill or fidelity in the performance of professional or fiduciary duties is malpractice.")).

The defendants assert that Gilbert cannot prevail on his claims because Gilbert cannot prove that he was damaged as a result of Johnson's alleged negligence.

(a) Personal Jurisdiction

The defendants argue that Gilbert cannot recover damages for his attorney's failure to move to dismiss for lack of personal jurisdiction because such a motion would not have been successful, and Gilbert cannot show that he would have been successful in the lawsuit but for his attorney's failure to file the motion.

Under Nebraska law, a child custody proceeding "includes a proceeding for paternity in which the issue of custody or visitation may appear." *Wolter v. Fortuna*, 928 N.W.2d 416, 423 (Neb. Ct. App. 2019) (citing Neb. Rev. Stat. § 43-1227(4)). It is true that "physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination." Neb. Rev. Stat. § 43-1238(c); *see also Amin v. Bakhaty*, 812 So.2d 12, 32 (1st Cir. 2001); *accord Ex parte Vega-Lopez*, 297 So.3d 1273, 1278 (Ala. Civ. App. 2019) (personal jurisdiction over a party required where the statute did not include the same language in the UCCJEA). But "if the proceeding is solely to establish the paternity of a child *or seeks parental support*," the UCCJEA does not apply. *Wolter*, 928 N.W.2d at 423 (emphasis added). The mother of Gilbert's child sought not only paternity and custody, but parental support. The UCCJEA does not contemplate parental support, and personal jurisdiction is required to order a party to pay child support. *See id.*; Neb. Rev. Stat. § 42-705; *Clark v. Clark*, 918 N.W.2d 336, 343 (Neb. Ct. App. 2018); *Metzler v. Metzler*, 913 N.W.2d 733, 742 (Neb. Ct. App. 2018); *In re Marriage of Crew*, 549 N.W.2d 527, 529 (Iowa 1996); *Kulko v. Sup. Ct. of Cal.*, 436 U.S. 84, 93-94 (1978).

A motion to dismiss for lack of personal jurisdiction "might" have been successful to the extent the mother sought parental support in a Nebraska

court. In short, Gilbert has sufficiently alleged, at this early stage of the lawsuit, that he was potentially damaged by his attorney's alleged negligence.

### (b) Temporary Custody Order

The defendants also argue that Gilbert did not plead he was damaged by Johnson's alleged negligence regarding the temporary custody order, both because Gilbert did not specifically include categories of damages in his complaint and because there are no damages available for this legal malpractice action. Gilbert's failure to include specific categories of damages does not warrant dismissing his claim. "So long as the facts alleged in the complaint demonstrate [an] actual injury," Gilbert has met his burden at the pleadings stage. *In re SuperValu, Inc.*, 870 F.3d 763, 772 (8th Cir. 2017). From the facts in the complaint, it is fair to infer that Gilbert was, in some way, injured by the lost time with his child, albeit not economically.

However, the Nebraska Supreme Court has not yet opined on whether noneconomic damages are recoverable in a legal malpractice action. So, the Court "must attempt to predict what that court would decide if it were to address the issue." *Thompson v. Harrie*, 59 F.4th 923, 926 (8th Cir. 2023) (quoting *Lindsay Mfg. Co. v. Hartford Acc. & Indem. Co.*, 118 F.3d 1263, 1268 (8th Cir. 1997)). In making a prediction, the Court "may consider relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." *Lindsay Mfg. Co.*, 118 F.3d at 1268 (quoting *Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 729 (8th Cir. 1995), *cert. denied*, 516 U.S. 1174 (1996)). And, if the Court is "genuinely uncertain" about a question of state law, the Court may certify a question to the Nebraska Supreme Court. *Johnson v. Johnson Deere Co.*, 935 F.2d 151, 153 (8th Cir. 1991) (quoting *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C. Cir. 1988)); *see also* NECivR 7.4; Neb. Rev. Stat. § 24-219.

7

*Availability of Noneconomic Damages in Legal Malpractice Suits*

Some courts have allowed a claimant to recover noneconomic damages in legal malpractice cases only with evidence of an attorney's egregious or intentional misconduct.[2] *See Zoss v. Protsch*, No. 20-cv-4211, 2023 WL 114369, at *3-4 (D.S.D. Jan. 5, 2023); *Froid v. Zacheis*, 494 P.3d 673 (Colo. Ct. App. 2021) (citing *McGee v. Hyatt Legal Servs., Inc.*, 813 P.2d 754 (Colo. Ct. App. 1990)); *Person v. Behnke*, 611 N.E.2d 1350, 1355 (Ill. App. Ct. 1993) (emotional damages are limited to "most egregious cases of legal malpractice"); *Bowman v. Doherty*, 686 P.2d 112, 118 (Kan. 1984) (where "injurious conduct is willful or wanton, or the defendant acts with intent to injure," the general rule barring recovery for mental distress does not apply (quoting *Hoard v. Shawnee Mission Med. Ctr.*, 662 P.2d 1214, 1220 (Kan. 1983) (internal citations omitted))); *accord Timms v. Rosenblum*, 713 F. Supp. 948, 954-55 (E.D. Va. 1989).

Recognizing that "negligent counsel would have virtual immunity for any malpractice committed when retained for noneconomic purposes," *Kohn v. Schiappa*, 656 A.2d 1322, 1324 (N.J. Super. Ct. Law Div. 1995), some courts have permitted emotional distress or mental anguish damages when a negligent lawyer's client did not suffer a pecuniary loss. *See Henderson v. Domingue*, 626 So. 2d 555, 559 (La. Ct. App. 1993), *writ denied*, 630 So. 2d 799 (La. 1994); *accord Reed v. Mitchell & Timbanard, P.C.*, 903 P.2d 621, 626 (Ariz. Ct. App. 1995). And some states allow recovery of noneconomic damages where a lawyer's malpractice resulted in a "loss of liberty." *Wagenmann v. Adams*, 829 F.2d 196, 221-22 (1st Cir. 1987); *see Bowman*, 686 P.2d at 119 ("One being negligently deprived of his freedom suffers an injury which could cause mental

_____

[2] At least one court disallowed noneconomic damages in legal malpractice cases, apparently without exception. *See Magnuson v. Velikanje, Moore & Shore, Inc.,* No. 15662-1-III, 1997 WL 154098, at *2-3 (Wash. Ct. App. Apr. 3, 1997).

distress."); *Kohn*, 656 A.2d at 1324; *cf. Vincent v. DeVries*, 72 A.3d 886, 897 (Vt. 2013) (reversing an award of emotional damages because "in contrast to the loss of liberty or one's child—very significant losses for which there may be no adequate measure of pecuniary damages, and in connection with which serious emotional distress can be readily expected—what plaintiff ultimately lost in this case was money.").

A claimant in Iowa can recover noneconomic damages when an attorney's negligence harms a client in "special cases involving peculiarly personal subject matters," such as immigration, though not bankruptcy. *Miranda v. Said*, 836 N.W.2d 8, 24 (Iowa 2013) (quoting *Lawrence v. Grinde*, 534 N.W.2d 414, 422 (Iowa 1995)); *Oswald v. LeGrand*, 453 N.W.2d 634, 639 (Iowa 1990). In *Miranda*, an attorney "only pursued an illegitimate course of conduct that had no chance of success. . . . The negligent conduct was doomed to directly result in a separation of the family for a decade." 836 N.W.2d at 33. Noneconomic damages were warranted based on both "the nature of the relationship" and "the high likelihood of such damages from negligent acts engaged in by the lawyer." *Id.*; *see also McFarland v. Rieper*, 929 N.W.2d 273 (Iowa Ct. App. 2019) (to recover for mental anguish, a plaintiff in a legal malpractice action must prove an attorney's actions were "illegitimate" and "especially likely to produce serious emotional harm" (quoting *Miranda*, 836 N.W.2d at 33)).

### Noneconomic Damages in Nebraska

As noted above, in Nebraska, it is an open question whether noneconomic damages are recoverable in a legal malpractice action. More generally, a plaintiff may recover noneconomic damages for a tort claim in the absence of a physical injury in some circumstances, though such damages generally require a showing of intentional or egregious conduct. *See Millard Gutter Co. v. Shelter*

*Mut. Ins. Co.*, 980 N.W.2d 420, 432 (Neb. 2022) (bad faith, an intentional tort); *Catron v. Lewis,* 712 N.W.2d 245, 248-49 (Neb. 2006) (negligent infliction of emotional distress, requiring some proximity to a physical injury); *Heitzman v. Thompson,* 705 N.W.2d 426, 430-31 (Neb. 2005) (intentional infliction of emotional distress, requiring both intent and extreme or outrageous conduct); *Sabrina W. v. Willman,* 540 N.W.2d 364, 370 (Ct. App. Neb. 1995) (invasion of privacy, an intentional tort).

Nebraska has also permitted noneconomic damages in employment discrimination cases involving a public-policy-based retaliatory discharge. *Wendeln v. The Beatrice Manor, Inc.*, 712 N.W.2d 226, 242 (Neb. 2006). A retaliatory discharge which violates public policy is an intentional tort. *See O'Brien v. Bellevue Pub. Sch.*, 856 N.W.2d 731, 741 (Neb. 2014) (claimant has burden to show that he or she "has been the victim of intentional impermissible conduct"); *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 355 (Iowa 1989) ("A wrongful or retaliatory discharge in violation of public policy is an intentional wrong committed by the employer against an employee"). Such noneconomic damages are not limited to severe mental anguish. *Wendeln,* 712 N.W.2d at 243 (recognizing the difference between a tort claim for negligent or intentional infliction of emotional distress and a tort claim for an unlawful retaliatory discharge). The Nebraska Supreme Court, quoting *Niblo,* 445 N.W.2d at 355, determined that there was "no logical reason why a wrongfully discharged employee's damages should be limited to out-of-pocket loss of income, when the employee also suffers causally connected emotional harm." *Id.*

In personal injury cases, a parent may recover for the loss of a nonfatally injured child's services. *See Guenther by Guenther v. Stollberg,* 495 N.W.2d 286, 286 (Neb. 1993) (citing *Macku v. Drackett Prods. Co.,* 343 N.W.2d 58 (1984)). Whether a parent may recover for loss of consortium for a child is yet

undetermined. *But see id.* ("[W]e have neither been cited to nor are we aware of any case in which we have permitted a parent to recover for the loss of a nonfatally injured minor child's consortium.").

### Certifying Question

Drawing all inferences in the plaintiff's favor, Gilbert has alleged that his attorney intentionally gave him false advice and intentionally did not pursue Gilbert's requests for custody of his child. *See* filing 1-2 at 7. His relationship with Johnson involved a "peculiarly personal subject matter." *Miranda*, 836 N.W.2d at 24. There is no pecuniary interest in the time Gilbert spends with his child, so economic damages are unavailable, even if Gilbert is able to prove that Johnson was intentionally or egregiously incompetent. But whether these facts might allow recovery for noneconomic damages is an unsettled and unknowable question of law.

Given the unsettled law in Nebraska and conflicting law in other states, it is impossible to predict in what circumstances, if any, a claimant in Nebraska might recover noneconomic damages for legal malpractice. To determine the scope of Gilbert's malpractice action and the damages he might be able to recover if he is successful, the Court must certify this unanswered question to the Nebraska Supreme Court. Pursuant to NECivR 7.4, the parties shall prepare and file stipulated facts and brief the issue.

### (c) Responsive Pleading and Motion to Withdraw

Gilbert also seeks damages premised on his attorney's failure to file a responsive pleading, and his attorney's inclusion of "disparaging" facts in a motion to withdraw. Filing 1-2 at 9. The defendants argue that Gilbert has not sufficiently connected these acts to any damages. But Gilbert asserts that the statements in the motion to withdraw, and the failure to file a responsive

pleading, "created in the court a negative impression of the plaintiff." Filing 1-2 at 8. Resolving all inferences in favor of the plaintiff *at this stage*, had the Lancaster County judge had a better impression of Gilbert, the outcome of the lawsuit "might" have given Gilbert a more favorable child custody or child support arrangement. In any event, these alleged acts by Johnson support Gilbert's claim that Johnson was negligent, and had Gilbert received competent counsel, he would have obtained the desired outcome in his custody case.

### (d) Excessive Fees

Gilbert finally alleges that Johnson committed professional negligence by charging excessive fees. He can recover for this injury. *See Young*, 835 N.W.2d at 692; *Nuss v. Alexander*, 691 N.W.2d 94, 99 (Neb. 2005). Gilbert alleges that Johnson charged unreasonable fees and he appears to allege that Johnson billed Gilbert for work that was never completed. *See* filing 1-2 at 7-8. Further, Gilbert argues that no legal fees would have been necessary had the claims (or at least part of the claims) against Gilbert been dismissed for lack of personal jurisdiction. Gilbert has sufficiently alleged a claim against the defendants for excessive fees, and this claim will not be dismissed.

### IV. CONCLUSION

The Court proposes to certify the following question to the Nebraska Supreme Court:

> In what circumstances, if any, may a client recover noneconomic damages in a legal malpractice action?

Related to this certified question, the parties, pursuant to NECivR 7.4, shall submit stipulated facts and simultaneous briefs on or before <u>February 16,</u>

2024. The defendants' motion to dismiss is denied, without prejudice to potentially reasserting their argument regarding the availability of certain damages upon receiving guidance from the Nebraska Supreme Court about the relevant rule.

Because the plaintiff's claims will move forward regardless of the availability of noneconomic damages, the parties may proceed with case progression.

Accordingly,

IT IS ORDERED:

1. On or before February 16, 2024, the parties shall file simultaneous briefs expressing their position on how the damages issue discussed in this Memorandum and Order should be presented and framed to the Nebraska Supreme Court.

2. The plaintiff's objection (filing 17) is overruled.

3. The Magistrate Judge's Findings and Recommendation (filing 16) are adopted.

4. The plaintiff's motion to remand (filing 11) is denied.

5. The defendants' motion to dismiss (filing 14) is denied.

6. This matter is referred to the Magistrate Judge for case progression.

13

7.     The Clerk of the Court shall set a case management deadline
       for February 16, 2024, with the following docket text: Check
       for party submissions regarding certified question.

Dated this 9th day of February, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge