IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHRISTIAN L. GILBERT,<br><br>        Plaintiff,<br><br>vs.<br><br>CHRISTOPHER M. JOHNSON, and CORDELL & CORDELL, P.C., a Missouri corporation,<br><br>        Defendants. | 4:22-CV-3248<br><br>ORDER AND CERTIFIED QUESTION |

    The plaintiff, Christian Gilbert, is suing his former attorney, Christopher Johnson, and his lawyer's firm, Cordell & Cordell, for legal malpractice. One of the plaintiff's theories of recovery depends on an unsettled question of Nebraska law that the Court will certify to the Nebraska Supreme Court pursuant to Neb. Rev. Stat. § 24-219 *et seq*.

STATEMENT OF FACTS

    Gilbert retained Johnson when he was a defendant in a paternity action in the District Court of Lancaster County, Nebraska. Filing 1-2 at 5. The mother of Gilbert's minor child sought to establish Gilbert's paternity, and to be awarded custody of the child and child support. Filing 1-2 at 4; *see also Kee v. Gilbert*, 992 N.W.2d 486, 490 (Neb. Ct. App. 2023). The state court entered a temporary custody order pending the outcome of the paternity action. *See Kee*, 992 N.W.2d at 491. In that temporary order, the mother was awarded custody, while Gilbert was allowed visitation every other weekend. *Id*. Gilbert alleges that he never agreed to this temporary custody agreement, despite statements in the state court's order suggesting otherwise. Filing 1-2 at 7. Rather than visitation, Gilbert

wanted custody of the child. Johnson allegedly advised Gilbert that "there was no way" the Nebraska court would award custody of the child to Gilbert, "and that the visitation set forth in the 'Temporary Order' was the most the court would award him." Filing 1-2 at 7. Gilbert alleges this advisement was either negligently or knowingly false, and Johnson failed to advocate for Gilbert's interest in the custody of his child. Filing 1-2 at 7.

Gilbert eventually retained new counsel. Ultimately, the court awarded sole custody to the child's mother, subject to specified parenting time by Gilbert. *Kee,* 992 N.W.2d at 492. Gilbert alleges that but for Johnson's negligence in representing him, Gilbert would have been awarded more than visitation with his child.

## NATURE OF CONTROVERSY

From the facts alleged in his complaint, it is fair to infer that Gilbert was injured by the court's custody orders, albeit not economically. However, the Nebraska Supreme Court has not yet opined on whether noneconomic damages are recoverable in a legal malpractice action. After reviewing tort law in Nebraska and neighboring jurisdictions, this Court determined it was "genuinely uncertain" about this question of Nebraska law, and so the question must be certified to the Nebraska Supreme Court. Filing 30.

*Availability of Noneconomic Damages in Legal Malpractice Suits*

Courts have reached differing conclusions about the circumstances in which a former client may recover noneconomic damages allegedly caused by legal malpractice:

- Recognizing that "negligent counsel would have virtual immunity for any malpractice committed when retained for noneconomic purposes," *Kohn v. Schiappa,* 656 A.2d 1322, 1324 (N.J. Super. Ct. Law Div. 1995), some courts

2

have permitted emotional distress or mental anguish damages when a negligent lawyer's client did not suffer a pecuniary loss. *See Henderson v. Domingue*, 626 So. 2d 555, 559 (La. Ct. App. 1993), *writ denied*, 630 So. 2d 799 (La. 1994); *accord Reed v. Mitchell & Timbanard, P.C.*, 903 P.2d 621, 626 (Ariz. Ct. App. 1995).

- Some courts have allowed a claimant to recover noneconomic damages in legal malpractice cases only with evidence of an attorney's egregious or intentional misconduct. *See Zoss v. Protsch*, No. 20-cv-4211, 2023 WL 114369, at *3-4 (D.S.D. Jan. 5, 2023); *Froid v. Zacheis*, 494 P.3d 673 (Colo. Ct. App. 2021) (citing *McGee v. Hyatt Legal Servs., Inc.*, 813 P.2d 754 (Colo. Ct. App. 1990)); *Person v. Behnke*, 611 N.E.2d 1350, 1355 (Ill. App. Ct. 1993) (emotional damages are limited to "most egregious cases of legal malpractice"); *Bowman v. Doherty*, 686 P.2d 112, 118 (Kan. 1984) (where "injurious conduct is willful or wanton, or the defendant acts with intent to injure," the general rule barring recovery for mental distress does not apply (quoting *Hoard v. Shawnee Mission Med. Ctr.*, 662 P.2d 1214, 1220 (Kan. 1983) (internal citations omitted))); *accord Timms v. Rosenblum*, 713 F. Supp. 948, 954-55 (E.D. Va. 1989).

- Some courts allow recovery of noneconomic damages where a lawyer's malpractice resulted in a "loss of liberty." *Wagenmann v. Adams*, 829 F.2d 196, 221-22 (1st Cir. 1987); *see Bowman*, 686 P.2d at 119 ("One being negligently deprived of his freedom suffers an injury which could cause mental distress."); *Kohn*, 656 A.2d at 1324; *cf. Vincent v. DeVries*, 72 A.3d 886, 897 (Vt. 2013) (reversing an award of emotional damages because "in contrast to the loss of liberty or one's child—very significant losses for which there may be no adequate measure of pecuniary damages, and in connection with which serious emotional distress can be readily expected— what plaintiff ultimately lost in this case was money").

3

- At least one court seems to have disallowed noneconomic damages in legal malpractice cases, apparently without exception. *See Magnuson v. Velikanje, Moore & Shore, Inc.,* No. 15662-1-III, 1997 WL 154098, at *2-3 (Wash. Ct. App. Apr. 3, 1997).

- A claimant in Iowa can recover noneconomic damages when an attorney's negligence harms a client in "special cases involving peculiarly personal subject matters," such as immigration, though not bankruptcy. *Miranda v. Said*, 836 N.W.2d 8, 24 (Iowa 2013) (quoting *Lawrence v. Grinde*, 534 N.W.2d 414, 422 (Iowa 1995)); *Oswald v. LeGrand,* 453 N.W.2d 634, 639 (Iowa 1990). In *Miranda*, an attorney "only pursued an illegitimate course of conduct that had no chance of success. . . . The negligent conduct was doomed to directly result in a separation of the family for a decade." 836 N.W.2d at 33. Noneconomic damages were warranted based on both "the nature of the relationship" and "the high likelihood of such damages from negligent acts engaged in by the lawyer." *Id.*; *see also McFarland v. Rieper*, 929 N.W.2d 273 (Iowa Ct. App. 2019) (to recover for mental anguish, a plaintiff in a legal malpractice action must prove an attorney's actions were "illegitimate" and "especially likely to produce serious emotional harm" (quoting *Miranda,* 836 N.W.2d at 33)).

*Noneconomic Damages in Nebraska*

As noted above, in Nebraska, it is an open question whether noneconomic damages are recoverable in a legal malpractice action. More generally, a plaintiff may recover noneconomic damages for a tort claim in the absence of a physical injury in some circumstances, though such damages generally require a showing of intentional or egregious conduct. *See Millard Gutter Co. v. Shelter Mut. Ins. Co.,* 980 N.W.2d 420, 432 (Neb. 2022) (bad faith, an intentional tort); *Catron v. Lewis,* 712 N.W.2d 245, 248-49 (Neb. 2006) (negligent infliction of emotional

4

distress, requiring some proximity to a physical injury); *Heitzman v. Thompson,* 705 N.W.2d 426, 430-31 (Neb. 2005) (intentional infliction of emotional distress, requiring both intent and extreme or outrageous conduct); *Sabrina W. v. Willman,* 540 N.W.2d 364, 370 (Neb. Ct. App. 1995) (invasion of privacy, an intentional tort).

Nebraska has also permitted noneconomic damages in employment discrimination cases involving a public-policy-based retaliatory discharge. *Wendeln v. The Beatrice Manor, Inc.,* 712 N.W.2d 226, 242 (Neb. 2006). A retaliatory discharge which violates public policy is an intentional tort. *See O'Brien v. Bellevue Pub. Sch.,* 856 N.W.2d 731, 741 (Neb. 2014) (claimant has burden to show that he or she "has been the victim of intentional impermissible conduct"); *Niblo v. Parr Mfg., Inc.,* 445 N.W.2d 351, 355 (Iowa 1989) ("A wrongful or retaliatory discharge in violation of public policy is an intentional wrong committed by the employer against an employee"). Such noneconomic damages are not limited to severe mental anguish. *Wendeln,* 712 N.W.2d at 243 (recognizing the difference between a tort claim for negligent or intentional infliction of emotional distress and a tort claim for an unlawful retaliatory discharge). The Nebraska Supreme Court, quoting *Niblo,* 445 N.W.2d 351, determined that there was "no logical reason why a wrongfully discharged employee's damages should be limited to out-of-pocket loss of income, when the employee also suffers causally connected emotional harm." *Id.*

In personal injury cases, a parent may recover for the loss of a nonfatally injured child's services. *See Guenther by Guenther v. Stollberg,* 495 N.W.2d 286, 286 (Neb. 1993) (citing *Macku v. Drackett Prods. Co.,* 343 N.W.2d 58 (1984)). Whether a parent may recover for loss of consortium for a child is yet undetermined. *But see id.* ("[W]e have neither been cited to nor are we aware of any case in which we have permitted a parent to recover for the loss of a nonfatally injured minor child's consortium.").

5

Gilbert has alleged that his attorney committed legal malpractice by intentionally neglecting a reasonable duty, both by knowingly giving Gilbert false advice and failing to pursue Gilbert's requests for custody of his child. *See* filing 1-2 at 7; *Kozal v. Snyder*, 978 N.W.2d 174, 179 (Neb. 2022) (citing *Young v. Govier & Milone, L.P.*, 835 N.W.2d 684 (Neb. 2013)). Gilbert's relationship with Johnson involved a "peculiarly personal subject matter." *Miranda,* 836 N.W.2d at 24. There is no pecuniary interest in Gilbert's custody of his child, so economic damages are unavailable, even if Gilbert is able to prove that Johnson was intentionally or egregiously incompetent. But whether these facts might allow recovery for noneconomic damages is an unsettled question of law.

Given the unsettled law in Nebraska and conflicting law in other states, it is impossible to predict in what circumstances, if any, a claimant in Nebraska might recover noneconomic damages for legal malpractice. It is also unclear what Gilbert must prove in order to recover noneconomic damages, if such damages are available. So, to resolve the conflict, this Court will certify the question presented to the Nebraska Supreme Court pursuant to § 24-219.

## CERTIFIED QUESTION

In what circumstances, if any, may a client recover noneconomic damages in a legal malpractice action arising from a child custody dispute?

IT IS ORDERED:

1. The preceding question is certified to the Nebraska Supreme Court pursuant to § 24-219.

6

2. The Clerk of the Court shall forward a copy of this order to the Nebraska Supreme Court under the Court's official seal, along with seven additional certified copies of this order and a certified copy of the Court's docket sheet.

3. The parties shall pay the $130 in appellate filing fees forthwith, evenly divided between them, to the Clerk of the Nebraska Supreme Court and Court of Appeals.

4. The Clerk of the Court shall, upon request, provide the Nebraska Supreme Court with any portion of the record requested by that court pursuant to § 24-222.

5. The Clerk of the Court shall set a case management deadline for May 12, 2024, with the following docket text: Check for acceptance of certified question.

Dated this 12th day of March, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge