IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHRISTIAN L. GILBERT, | |
| Plaintiff, | **4:22CV3248** |
| vs. | |
| CHRISTOPHER M. JOHNSON, and CORDELL & CORDELL, P.C., a Missouri corporation; | **MEMORANDUM AND ORDER** |
| Defendants. | |

Before the Court is Defendants' Motion to Compel. Filing No. 89. For the reasons set forth herein, Defendants' motion is granted in part and denied in part.

## BACKGROUND

The operative complaint was filed on March 27, 2025 and alleges legal malpractice claims against Defendants. The alleged legal malpractice relates to Defendants' representation of Plaintiff in a child custody matter (the "Underlying Litigation"). Filing No. 67. Pursuant to the Complaint, Defendant Johnson represented Plaintiff in the Underlying Litigation from approximately January 2020 through approximately September 2020, after which Plaintiff retained Matt Catlett (his current counsel in this lawsuit) to represent him. Plaintiff requests, among other items of damage related to the alleged malpractice, economic damages including: (1) the amounts billed to him by Defendant Johnson; (2) Plaintiff's ordered child support payments; (3) the amount Plaintiff was ordered to pay in

1

attorney fees in the Underlying Litigation to his child's mother (P.K.); and (4) amounts billed to him by his new counsel in the Underlying Litigation (Mr. Catlett).

In April 2025, Defendant served discovery on Plaintiff. Filing Nos. 93, 93-2, 93-4. Plaintiff responded in May 2025 and asserted a number of objections. Filing Nos. 93-1, 93-3, 93-5. The parties exchanged written discovery dispute letters and ultimately had a discovery conference with the Court on July 29, 2025. Filing Nos. 80, 81, 93-6. In this lengthy discovery conference, the undersigned made rulings and ordered Plaintiff to answer certain discovery. Any discovery motions relating to issues not ruled upon during the conference were to be filed on or before August 28, 2025. The pending motion was timely filed on August 28, 2025.

## ANALYSIS

Defendants now move to compel Plaintiff to respond to Interrogatories Nos. 12 through 17, Requests for Production Nos. 4 and 5, and Requests for Admission Nos. 10, 11, 12, 16, 19, 73, 74, 83, 84, 87, 88, 95, 98, 99, 103, 106, 108, 111, 116, 127, 146, and 151.

As an initial matter, Plaintiff was ordered during the discovery dispute conference to respond to Requests for Admission Nos. 10, 11, 12, 73, 74, and 146 by August 28, 2025. Filing No. 81; Filing No. 80 at 1:24–1:26 (RFAs 10–12 and 146); 1:38–1:39 (RFAs 73–74). Upon review of the briefing, it is clear Plaintiff did not comply with the Court's rulings. Accordingly, Plaintiff is ordered to respond to these discovery requests as previously ordered within fourteen days. Failure to do so may result in sanctions, up to and including dismissal of this case.

Plaintiff was also ordered to respond to Request for Production No. 5 during the discovery dispute conference. Filing No. 80 at 1:04. Plaintiff supplemented his response to this request on September 3, 2025 (after Defendants filed the motion to compel). Plaintiff's counsel attested Plaintiff has now produced all documents

responsive to this request. Filing No. 100-1 at 2. Accordingly, Defendants' motion to compel Plaintiff to respond to Request for Production No. 5 is denied as moot.

Finally, the Court sustained Plaintiff's speculation objection to Requests for Admission Nos. 83, 84, 87, and 88 during the discovery dispute conference. Filing No. 80 at 1:46:15–1:48:40. Defendants' motion to compel responses to these requests is denied. The Court now turns to the remaining disputed requests.

## I.     Interrogatory Nos. 12 through 17.

Plaintiff initially objected to Interrogatories Nos. 2 through 17 on the grounds that these interrogatories exceeded the number of interrogatories allowed. Filing No. 93-1. During the discovery dispute conference, the Court ruled on the number of interrogatories contained within Interrogatories Nos. 1, 3, 4, and 11[1] and provided guidance but did not rule on the number of interrogatories contained within Interrogatory No. 12. Filing No. 80 at 21:00–23:06. After the conference, Plaintiff agreed to respond to Interrogatories Nos. 1 through 11 but argued Interrogatory No. 12 consisted of 52 interrogatories and refused to answer Interrogatories Nos. 13 through 17.

Rule 33(a)(1) of the Federal Rules of Civil Procedure mandates that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." This Court's local rules clarify "each inquiry seeking a discrete item of information is counted as one interrogatory. For example, the following question is counted as 3 interrogatories: 'Please state the name, address, and telephone number of any witness to the accident set forth in the complaint.'" NECivR 33.1(c). The focus of this inquiry is on the number of questions asked— not the number of answers provided. For instance, "name your witness" is one question even if the responding party names fifteen witnesses. *Abarca v. Werner*

---

[1] Filing No. 80 at 4:04–4:50 (No. 1 is four); 7:34–7:45 (No. 3 is four); 14:55–15:06 (No. 4 is two); 17:42–18:06 (No. 11 is two).

*Enters., Inc.*, No. 8:14CV319; 8:15CV287; 8:17CV145, 2025 U.S. Dist. LEXIS 9946, at *41 (D. Neb. Jan. 21, 2025).

At issue is Interrogatory No. 12, set forth below, which Plaintiff argues exceeds the number of interrogatories permitted pursuant to Rule 33(a)(1).

**INTERROGATORY NO. 12**: For each Request for Admission that you deny in whole or in part, explain the basis for the denial.

Filing No. 93-1 at 16.

"Numerous jurisdictions are in agreement regarding how to count" this type of interrogatory. *Constr. Sys., Inc. v. Gen. Cas. Co. of Wis.*, No. 09-3697, 2011 WL 13312221, at *3 (D. Minn. Apr. 22, 2011) (collecting cases). "Allowing service of an interrogatory which requests disclosure of all of the information on which the denials of each of 50 requests for admissions were based . . . essentially transforms each request for admission into an interrogatory." *Id.* (quoting *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998)).

After review of the relevant caselaw, the undersigned agrees Interrogatory No. 12 consists of multiple subparts and would constitute a separate interrogatory for each request Plaintiff denies.

Defendants request that, if the undersigned finds that Interrogatory No. 12 constitutes more than one subpart, the Court grant him leave to serve more interrogatories. The Court may grant "[l]eave to serve additional interrogatories . . . to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. Proc. 33(a)(1). Other than a cursory statement that "[l]egal malpractice cases are complex and require substantial discovery," Defendants have provided no further support for this request. This is not enough when Defendants have served 164 requests for admission on Plaintiff and, thus, are asking the Court to potentially increase their allowed interrogatory number by over six hundred percent. The Court will deny Defendants' request to compel Plaintiff to respond to Interrogatory No. 12.

Defendants alternatively request that the Court order Plaintiff to not respond to Interrogatory No. 12 and, instead, respond to Interrogatory Nos. 13 through 17. The Court construes this alternative request as Defendants withdrawing Interrogatory No. 12. This request is granted. Plaintiff is ordered to respond to Interrogatory Nos. 13 through 17.[2] The Court next turns to Defendants' disputed request for production.

## II.    Request for Production No. 4.

Defendants' Request for Production No. 4 and Plaintiff's response are duplicated below:

**REQUEST NO 4**: All written communication between Plaintiff and the Law Office of Matt Catlett for the litigation between you and [P.K.] that Matt Catlett took over from Defendants, including but not limited to e-mails, letters, texts, billing statements, invoices, and payments.

**RESPONSE**: Objection, relevance, not proportional to the needs of the case, vague ("for the litigation . . ."), and encompasses documents protected by attorney-client privilege.

Filing No. 93-3 at 3. Plaintiff later withdrew his vagueness objection and is solely objecting on relevance, proportionality, and attorney-client privilege. Filing No. 99 at 6.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. Proc. 26(b). Discovery requests should be considered relevant if there is "any possibility the information sought is relevant to any issue in the case

---

[2]  The parties do not argue or brief whether Interrogatories Nos. 13 through 17 constitute more than one interrogatory each. The undersigned has reviewed these interrogatories. To the extent, Interrogatories Nos. 1 through 11 and 13 through 17 total more than 25 interrogatories (upon review they total, at most, 35 interrogatories), Defendants are granted leave to serve additional interrogatories pursuant to Rule 33. Based upon the undersigned's review of the docket in this matter and the submissions in this case, this increase in interrogatory numbers is warranted and consistent with the Federal Rules.

and should ordinarily be allowed, unless it is clear the information sought can have no possible bearing on the subject matter of the action." *Bailey v. City of Bellevue*, No. 4:18CV3132, 2020 WL 5664947, at *3 (D. Neb. Sept. 23, 2020). Mere speculation that information might be useful will not suffice. Litigants seeking to compel discovery must describe with a reasonable degree of specificity the information they hope to obtain and its importance to their case. *See Hartman v. Sunbelt Rentals, Inc.*, No. 4:21CV3328, 2022 WL 17253529, at *4 (D. Neb. Nov. 28, 2022) (citing *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972)).

Nebraska law governs privilege in this diversity action. *See Fed. R. Evid. 501*. In Nebraska, "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications [between the lawyer and the client] made for the purpose of facilitating the rendition of professional legal services to the client[.]" Neb. Rev. Stat. § 27-503(2). A court should find that a party impliedly waived the attorney-client privilege through their own affirmative conduct when three conditions exist: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *State v. Roeder*, 262 Neb. 951, 958, 636 N.W.2d 870, 876 (2001) (quoting *League v. Vanice*, 221 Neb. 34, 44, 374 N.W.2d 849, 856 (1985)). "Fairness is an important and fundamental consideration in assessing the issue of whether there has been a waiver of the lawyer-client privilege." *League*, 221 Neb. at 44, 374 N.W.2d at 856.

Here, all three conditions exist, and Plaintiff impliedly waived the attorney-client privilege. Specifically, Plaintiff is seeking to recover from Defendants the legal expenses he paid to Mr. Catlett after Defendants withdrew. *Cf. Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002) (applying Nebraska law to hold plaintiff waived the attorney-client privilege by seeking indemnification from

6

defendant for attorneys' fees incurred in a separate litigation because this put the work of plaintiff's attorneys in the other litigation at issue). Plaintiff also alleges the outcome of the Underlying Litigation would have been different but for Defendants' malpractice. Since Mr. Catlett represented Plaintiff during the remainder of the Underlying Litigation and subsequent appeal, Plaintiff has put Mr. Catlett's work in the Underlying Litigation directly at issue in this case. Applying the attorney-client privilege in these circumstances would unfairly deprive Defendants of access to information vital to defending against Plaintiff's claims.

For the same reasons, this request is relevant and proportional to the needs of this case. Billing statements, invoices, and payments are relevant because Plaintiff seeks to recover from Defendants the amounts Mr. Catlett billed him in the Underlying Litigation. Communications between Plaintiff and Mr. Catlett are relevant because Plaintiff alleges the outcome of the Underlying Litigation would be different but for Defendants' malpractice.

Accordingly, Plaintiff's objections are overruled. Plaintiff is ordered to respond to Request No. 4.

### III.    Requests for Admission.

Finally, the Court turns to the disputed requests for admission. The Court begins with Plaintiff's mediation privilege objections.

### Requests for Admission Nos. 16 and 19.

Plaintiff objected to Requests for Admission Nos. 16 and 19 on mediation privilege, citing Neb. Rev. Stat. § 29-2933. The at-issue Requests are set forth below.

> **REQUEST NO. 16**: Admit that while Mr. Gilbert was at mediation, Mr. Gilbert and [P.K.] agreed to a temporary parenting schedule that would allow Mr. Gilbert to have [child] every other weekend from Friday at 5pm to Monday before noon.

**REQUEST NO. 19**: Admit that the Melanie Kirk Esq. letter dated April 17, 2020 accurately describes the agreement Mr. Gilbert reached with [P.K.] at the mediation.

Once again, Nebraska law governs privilege in this diversity action. *See* Fed. R. Evid. 501. In Nebraska, "a mediation communication is privileged . . . and is not subject to discovery[.]" Neb. Rev. Stat. § 25-2933(a). This means "[a] mediation party may refuse to disclose, and may prevent any other person from disclosing, a mediation communication." Neb. Rev. Stat. § 25-2933(b)(1). However, "[a] person that discloses or makes a representation about a mediation communication which prejudices another person in a proceeding is precluded from asserting [the] privilege . . . but only to the extent necessary for the person prejudiced to respond to the representation or disclosure." Neb. Rev. Stat. § 25-2934(b).

Assuming without deciding that the communications at issue do, in fact, constitute a mediation communication, Plaintiff is precluded from asserting the privilege. Plaintiff alleges the Court in the Underlying Litigation entered an order on May 8, 2020 setting forth a temporary custody arrangement. Plaintiff alleges the Court asserted this order was based on the agreement of the parties but that his counsel (Defendants) signed the order even though he did not agree to the custody arrangement. Filing No. 67 at 5 ¶ 17.

Three weeks before the Court entered the temporary order, Plaintiff attended a mediation with P.K. on April 17, 2020 without attorneys present. Filing No. 93-5 at 6. Melanie Kirk subsequently emailed a letter to P.K's counsel and Defendants, allegedly summarizing the agreement P.K. and Plaintiff reached during the mediation. Filing No. 93-4.

Plaintiff is asserting he did not agree to the temporary custody arrangement ordered by the Court. He also asserts Defendants signed the order despite him not agreeing to its provisions. Under these circumstances, Plaintiff is precluded from asserting the mediation privilege to avoid answering whether or not he agreed to

a certain custody arrangement during the mediation. Defendants' requests are sufficiently limited to the extent necessary to allow Defendants to respond to Plaintiff's allegations. Plaintiff's objections are overruled. He is ordered to respond to Requests for Admission Nos. 16 and 19.

**<u>Requests for Admission Nos. 95, 98, 99, 103, 106, 108, and 111.</u>**

Requests Nos. 95, 98, 99, 103, and 106 are similar. Defendants are requesting Plaintiff admit or deny that he is estopped from taking a certain position, seemingly due to conclusions made in the Underlying Lawsuit. These requests read as follows: "Admit that for the purposes of this present action, Mr. Gilbert is estopped from claiming . . ."

- "that he did not commit intimate partner abuse against [P.K.]." (RFA No. 95).
- "that [P.K.] did not move to Nebraska because of his actions." (RFA No. 98).
- "he did not assault [P.K.] on October 21, 2019." (RFA No. 99).
- "that the Nebraska Court's custody award and parenting plan is not in the best interest of [child]." (RFA No. 103).
- "that the temporary parenting plan was not, at the time challenged by Mr. Gilbert through the Motion for Reconsideration, in the best interests of [child]." (RFA No. 106).

Requests Nos. 108 and 111 are similar to those set forth above, with a slight wording change and read as follows: "Admit that Mr. Gilbert is barred from . . ."

- "claiming that the Nebraska court did not have jurisdiction under the UCCJEA." (RFA No. 108).
- "from disputing in this case that [P.K.] moved to Nebraska prior to the Nebraska paternity case being filed because of Mr. Gilbert's abuse." (RFA No. 111).

For each request, Plaintiff responds: "To the extent that the defendants intend 'Mr. Gilbert' to mean the plaintiff, objection, relevance and calls for a pure legal conclusion." Filing No. 93-5 at 24–27.

The Court first addresses Plaintiff's objection that Defendants' requests seek legal conclusions. Federal Rule of Civil Procedure 36 allows requests for admission relating to "facts, the application of law to fact, or opinions about either[.]" An application of law to fact request allows the parties to narrow the issues for trial. Fed. R. Civ. P. 36(a) advisory committee's note to 1970 amendment. "[T]he line between requests seeking legal conclusions and those merely seeking the application of law to fact can be 'murky' since 'the application of law to fact necessarily incorporates an admission as to what the law is.'" *N. Oil & Gas, Inc. v. EOG Resources, Inc.*, No. 1:16-cv-388, 2021 WL 4236870, at *2 (D.N.D. Sept. 16, 2021) (quoting *Aventure Commc'ns Tech., LLC v. MCI Commc'ns Servcs., Inc.*, No. 5:07-cv-4095, 2008 WL 4280371, at *1 (N.D. Iowa Sept. 16, 2008)).

"While a party may serve a request for an admission that seeks the application of law to fact, it is improper to request a party to admit a pure matter of law." *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, No. 8:06CV458, 2009 WL 1616629, at *2 (D. Neb. June 4, 2009). "Requests for admission are properly objectionable when they call for a conclusion of one of the ultimate issues in the case[.]" *Id.* (quoting *Williamson v. Corr. Med. Serv.*, No. 06-379, 2009 WL 1364350, at *2 (D. Del. May 14, 2009)). "Even though a request may be phrased to appear factual, if it encroaches on legal turf, or reaches the ultimate decision of the court, the request will be seen as seeking a legal conclusion and cannot be compelled." *Id.* (quoting *Phillip M. Adams & Assocs., LLC v. Dell, Inc.*, No. L05-CV-64, 2007 WL 128962, at *2 (D. Utah Jan. 11, 2007)).

Defendants' requests improperly seek legal conclusions. First, Request Nos. 103, 106, and 108 ask Plaintiff to admit or deny whether he is estopped from disputing certain legal conclusions. Whether the parenting plan entered in the

Underlying Litigation was in the best interest of the child or whether the Court in the Underlying Litigation had jurisdiction reach ultimate issues in this case and are not permissible.

Second, Request Nos. 95, 98, 99, and 111 ask Plaintiff to admit or deny whether he is estopped from disputing that he committed intimate partner abuse against P.K. or that P.K. moved to Nebraska because of such abuse. This is not the same as asking Plaintiff to admit or deny that he abused P.K. (a fact). The undersigned has carefully reviewed these requests in the context of the legal malpractice action at hand. Given the allegations in the complaint – that Defendants' legal malpractice caused Plaintiff to receive improper and detrimental outcomes in the Underlying Litigation – these requests go to ultimate issues of the case and are improper. *Cf. Sports v. Top Rank, Inc.*, No. 8:17CV11, 2017 WL 4863068, at *2 (D. Neb. Oct. 26, 2017) (requests asking party to admit or deny whether contract included certain terms was improper when the case turned on interpreting the contract).

Accordingly, Plaintiff's legal conclusion objections are sustained and Defendants' motion to compel Plaintiff to answer Request Nos. 95, 98, 99, 103, 106, 108, and 111 is denied. The Court turns to Defendants' remaining disputed requests for admission.

**Requests for Admission Nos. 116, 127, and 151.**

**REQUEST NO. 116**:  Admit that trial in the underlying Nebraska paternity action was held on the issues raised in [P.K.]'s Complaint and Mr. Gilbert's Answer and Counterclaim.

**RESPONSE**:  To the extent that the defendants intend "Mr. Gilbert" to mean the plaintiff, objection, calls for speculation and a pure legal conclusion.

First, Defendants are not asking for a legal conclusion. This request seeks a factual admission or denial, i.e., whether a trial was held on certain issues. Plaintiff's legal conclusion objection is overruled. Plaintiff's speculation objection is

11

also overruled because either a trial was or was not had on certain issues. Plaintiff is ordered to answer Request No. 116.

> **REQUEST NO. 127**:  Admit that in January 2023, [P.K.] was granted a domestic abuse protection order against Mr. Gilbert.

> **RESPONSE**: To the extent the defendants intend "Mr. Gilbert" to mean the plaintiff, objection, relevance.

P.K. is the mother of the child involved in the Underlying Litigation. Filing No. 67. Since the Underlying Lawsuit was a child custody matter, the undersigned finds Request No. 127 falls within the scope of Rule 26 and Plaintiff's relevance objection is overruled. Plaintiff is ordered to answer Request No. 127.

> **REQUEST NO. 151**: Admit that assuming the custody and parenting plan as determined in the Nebraska paternity case is correct, Mr. Gilbert does not dispute that he would also be responsible to pay child support under Iowa law.

> **RESPONSE**: To the extent the defendants intend "Mr. Gilbert" to mean the plaintiff, objection, calls for speculation and pure legal conclusion.

The Court set forth the law regarding legal conclusion objections to requests for admission above. Like the requests delineated in the previous section, this request is not seeking the application of law to fact. It is asking a purely hypothetical question—what child support Plaintiff would be required to pay under Iowa law. *Cf. Williams v. City of Burlington, Iowa*, No. 3:19-cv-43, 2020 WL 11028007, at *4 (S.D. Iowa July 22, 2020) (admit that "[p]roduction, display, or brandishing of a gun alone is not sufficient grounds for anyone to respond by using deadly force" was asking for a broad legal conclusion well beyond the facts of the case). Plaintiff's legal conclusion objection is sustained. Defendants' motion to compel is denied as it pertains to Request No. 151.

## CONCLUSION

Accordingly,

IT IS ORDERED that Defendants' Motion to Compel, Filing No. 89, is granted in part and denied in part as set forth herein.

1) Plaintiff is ordered to respond to Requests for Admission Nos. 10, 11, 12, 73, 74, and 146, as previously ordered during the discovery dispute conference, by October 23, 2025. Failure to do so may result in sanctions, up to and including dismissal of this case.

2) Defendants' motion to compel Plaintiff to respond to Request for Production No. 5 is denied as moot.

3) Defendants' motion to compel Plaintiff to respond to Requests for Admission Nos. 83, 84, 87, and 88 is denied.

4) Interrogatory No. 12 is withdrawn. Plaintiff is ordered to respond to Interrogatory Nos. 13 through 17 by November 10, 2025.

5) Plaintiff is ordered to respond to Request for Production No. 4 by November 10, 2025.

6) Plaintiff is ordered to answer Requests for Admission Nos. 16, 19, 116, and 127 by November 10, 2025.

7) Plaintiff's legal conclusion objections to Request for Admission Nos. 95, 98, 99, 103, 106, 108, 111, and 151 are sustained. Defendants' Motion to Compel is denied as it pertains to these requests.

Dated this 9th day of October, 2025.

BY THE COURT:


*s/ Jacqueline M. DeLuca*

United States Magistrate Judge

13