IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHRISTIAN L. GILBERT,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER M. JOHNSON, and<br>CORDELL & CORDELL, P.C., a Missouri<br>corporation;<br><br>Defendants. | 4:22CV3248<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Plaintiff Christian L. Gilbert's Statement of Objections to Magistrate Judge's Order (Filing No. 104).  Plaintiff is objecting to the Magistrate Judge's Memorandum and Order at Filing No. 101.  The Court will overrule the objections.

**PROCEDURAL BACKGROUND**

Plaintiff Christian L. Gilbert brings this action against Defendants Christopher M. Johnson and Cordell & Cordell, P.C. ("Cordell') for legal malpractice claims.  The alleged malpractice occurred during Defendants' representation of Plaintiff in a child custody matter filed by the mother of Plaintiff's child, P.K. in the District Court of Lancaster County, Nebraska (the "Underlying Litigation").  (Filing No. 67.)  At the time the complaint in the Underlying Litigation was filed, Plaintiff was residing in Iowa.  (Filing No. 67 at 1.)  Defendant Johnson filed a motion to dismiss the complaint in the Underlying Litigation for lack of subject matter jurisdiction on Plaintiff's behalf.  But the motion was denied, and the Nebraska court retained the matter in Nebraska.  (Filing No. 67 at 3.)

Plaintiff and P.K. attended mediation in the Underlying Litigation on April 17, 2020. (Filing No. 93-5 at 6.) Defendant Johnson, Plaintiff's retained counsel in the Underlying Litigation, was not present.  (Filing No. 93-5 at 6.)  The mediation resulted in a settlement that included an agreed upon temporary parenting schedule.  (Filing No. 93-4 at 46.)  Three weeks after the mediation, Plaintiff, P.K., and their attorneys signed the stipulated Temporary Parenting Plan Order, which reflects the agreed upon temporary parenting schedule.  (Filing No.

93-4 at 50.) Plaintiff alleges that Defendant Johnson signed this Temporary Parenting Plan Order despite Plaintiff advising him that he desired additional visitation with his child than what was set forth in the order. (Filing No. 67 at 5.)

Defendant Johnson moved to withdraw from representing Plaintiff on September 22, 2020, after Plaintiff failed to remit payment after notification that he was significantly behind on his payments to Defendant Cordell. The motion was granted. (Filing No. 67 at 5-6.) Plaintiff then retained Matt Catlett, who is also Plaintiff's counsel in this case, to represent him in the Underlying Litigation. (Filing No. 101 at 1.)

Plaintiff's complaint in the present action alleges Defendant Johnson's representation of Plaintiff was deficient in the following ways:

1. Defendant Johnson failed to advise Plaintiff of the possibility of moving to dismiss the complaint in the Underlying Litigation for lack of personal jurisdiction. (Filing No. 67 at 4.)
2. Defendant Johnson failed to move the court in the Underlying Litigation to dismiss for lack of personal jurisdiction, which the court would have granted. (Filing No. 67 at 3.)
3. Defendant Johnson failed to file and serve a responsive pleading to the complaint in the Underlying Litigation. (Filing No. 67 at 4.)
4. Defendant Johnson failed to seek temporary custody of Plaintiff's child, despite Plaintiff's repeated requests. (Filing No. 67 at 4.)
5. Defendant Johnson falsely told Plaintiff the visitation set forth in the court's "Temporary Order" was the most the court would award him. (Filing No. 67 at 5.)
6. Defendant Johnson made false and disparaging statements to the court about Plaintiff in his motion to withdraw from representing Plaintiff. (Filing No. 67 at 6.)
7. Defendant Johnson charged Plaintiff an unreasonable fee for the services he provided to Plaintiff. (Filing No. 67 at 5.)

Plaintiff requests economic damages, including: (1) the amounts billed to him by Defendant Johnson; (2) Plaintiff's ordered child support payments; (3) the amount Plaintiff was ordered to pay in fees in the Underlying Litigation to his child's mother (P.K.); and (4) amounts

billed to him by his new counsel, Mr. Catlett, in the Underlying Litigation and appeal. (Filing No. 67 at 9.)

In April 2025, Defendants served discovery on Plaintiff. (Filing No. 93; Filing No. 93-2; Filing No. 93-4.) Plaintiff responded in May 2025 and asserted various objections to the requests. (Filing No. 93-1; Filing No. 93-3; Filing No. 93-5.) The parties exchanged written discovery dispute letters and ultimately had a discovery conference with the Court on July 29, 2025. (Filing No. 80; Filing No. 81; Filing No. 93-6.) In this conference, Magistrate Judge Jacqueline M. DeLuca made several orders resolving the discovery disputes on the record, including orders for Plaintiff to answer certain discovery requests ("July 29, 2025 Order"). (Filing No. 80.) Such requests to be answered included Requests for Admission ("RFA") Nos. 10, 11, 12, 73, 74, and 146, which were ordered to be responded to by August 28, 2025. (Filing No. 80 at 1:24:00-1:26:30, 1:38:00-1:39:00; Filing No. 81.)

The July 29, 2025 Order was accompanied by a "Text Minute Entry" on the docket which stated, in part:

1. Plaintiff ordered to supplement and/or answer the discovery requests as set forth on the record on or before August 28, 2025.

2. Any discovery motions regarding issues discussed during this conference that were not ruled upon shall be filed on or before August 28, 2025.

(Filing No. 81)

On August 28, 2025, Defendants filed a Motion to Compel. (Filing No. 89.) Defendants' Motion to Compel requested an order compelling Plaintiff to answer certain contested discovery requests, including Requests for Admission Nos. 10, 11, 12, 73, 74, and 146, which were ordered to be answered in the July 29, 2025 Order. (Filing No. 89; Filing No. 80.)

The Magistrate Judge decided Defendants' Motion to Compel via a Memorandum and Order filed on October 9, 2025 ("October 9, 2025 Order"). (Filing No. 101.) The October 9, 2025 Order preliminarily noted, "Plaintiff was ordered during the discovery dispute conference to respond to RFA Nos. 10, 11, 12, 73, 74, and 146 by August 28, 2025." (Filing No. 101 at 2.) The Magistrate Judge found that Plaintiff failed to comply with the Court's rulings and ordered Plaintiff

3

to respond to the discovery requests "as previously ordered" within fourteen days, stating, "Failure to do so may result in sanctions, up to and including dismissal of this case." (Filing No. 101 at 2.)

In the October 9, 2025 Order, the Magistrate Judge additionally allowed Defendants to withdraw Interrogatory No. 12 after finding its subparts exceeded the 25 interrogatory maximum, and ordered Plaintiff to answer Interrogatory Nos. 13, 14, 15, 16, and 17, overruling Plaintiff's objection that the interrogatories exceed the 25-interrogatory limit. (Filing No. 101 at 3.) The Magistrate Judge also ordered Plaintiff to respond to Request for Production ("RFP") No. 4, holding Plaintiff impliedly waived attorney-client privilege for the information sought by the request. (Filing No. 101 at 5-7.) Lastly, the Magistrate Judge ordered Plaintiff to respond to RFA Nos. 16 and 19, ruling Plaintiff was precluded from asserting the mediation privilege. (Filing No. 101 at 8-9.) Plaintiff objects to these rulings in the October 9, 2025 Order. (Filing No. 104.)

### STANDARD OF REVIEW

On review of a magistrate judge's decision on a nondispositive matter, the district court may reconsider any part of the magistrate judge's order that it finds clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). A decision is "clearly erroneous" when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed [,]" even if the record contains sufficient evidence to support the finding. *Light of the World Gospel Ministries, Inc. v. Village of Walthill, Nebraska*, 336 F.R.D. 567, 570 (D. Neb. 2020) (quoting *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011)) (quotations omitted). This standard of review is "extremely deferential." *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007).

Magistrate judges retain "broad discretion in managing pretrial discovery" and in limiting discovery to what, in the magistrate judge's opinion, are the "'central issues.'" *Mehner v. Panera, LLC*, 8:22CV168, 2023 WL 6810277, at *1 (D. Neb. Oct. 16, 2023) (quoting *Hills v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017)). The review of a magistrate judge's discovery rulings is "'both narrow and deferential[.]'" *Id.* (quoting *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018)).

**DISCUSSION**

Plaintiff states four objections to the October 9, 2025 Order.  First, Plaintiff objects to the Magistrate Judge's order to respond to RFA Nos. 10, 11, 12, 73, 74, and 146, as previously ordered in the July 29, 2025 Order.  Plaintiff contends there was no "clear, written order" to respond to RFA Nos. 10, 11, 12, 73, 74, and 146, and such requests seek irrelevant information.  (Filing No. 105 at 1-2.)  Second, Plaintiff objects to the withdrawal of Interrogatory No. 12 and grant of leave for additional interrogatories in excess of the 25-interrogatory limit.  (Filing No. 105 at 8-9.)  Third, Plaintiff objects to the ruling that Plaintiff impliedly waived the attorney-client privilege and must respond to RFP No. 4. (Filing No. 105 at 14.)  Finally, Plaintiff objects to the Magistrate Judge's ruling that Plaintiff is precluded from asserting mediation communication privilege and must respond to RFA Nos. 16 and 19.  (Filing No. 105 at 20.)  The Court will overrule all four objections.

## I.    Requests for Admission 10, 11, 12, 73, 74, and 146

Plaintiff objects to the October 29, 2025 Order to respond to RFA Nos. 10, 11, 12, 73, 74, and 146 because the July 29, 2025 Order did not provide a "clear, written order" directing Plaintiff to respond to the requests.  (Filing No. 104.)  Additionally, Plaintiff maintains its initial objections to the requests that RFA Nos. 10, 11, 12, 73, 74, and 146 were not relevant, and RFA Nos. 10 and 12 call for speculation.  (Filing No. 104 at 4.)

Plaintiff first argues that the Magistrate Judge failed to provide a "clear, written order" because the July 29, 2025 Order was made orally and only available via audio file on the Court's electronic docketing system.  (Filing No. 105 at 3.)  Plaintiff alleges he had difficulties accessing this audio file to confirm what the Magistrate Judge ordered to be able to comply with the order to respond to RFA Nos. 10, 11, 12, 73, 74, and 146 by August 28, 2025."  (Filing No. 105 at 3-4.)  Plaintiff argues that the Magistrate Judge's text minute entry on the docket should have specified that Plaintiff respond to these specific requests for admission.  (Filing No. 105 at 4.)

Defendants represent they had no issues accessing the audio file containing the July 29, 2025 Order, and this Court notes that it also has been able to access the audio filing through the electronic docketing system to conduct its review of the record.  The audio file indicates the

Magistrate Judge overruled Plaintiff's objections to RFA Nos. 10-12, 73, 74, and 146. (Filing No. 80 at 1:24:00-1:26:30, 1:38:00-1:39:00.)

Further, Plaintiff cites no law supporting his proposition that magistrate judges must enter a written order detailing discovery rulings to be effectively binding on the parties. (*See* Filing No. 105.) The law instead indicates the opposite is true – while Fed. R. Civ. P. 72 enables magistrate judges to issue written orders on referred nondispositive pretrial matters when appropriate, the Advisory Committee Notes state that a magistrate judge's written orders serve to "preserve the record and facilitate review," and "[a]n oral order read into the record" satisfies this requirement. Fed. R. Civ. P. 72, Advisory Committee Note dated 1983, Subdivision (a); *see The Rock Place II, Inc. v. Sanitary & Improvement Dist. No. 596,* No. 8:20CV304, 2024 WL 5202866, at *1 (D. Neb. Dec. 23, 2024) (upholding magistrate judge's oral ruling on the record); *see also Avionic Co. v. Gen. Dynamics Corp,* 957 F.2d 555, 558 (8th Cir. 1992) (upholding the district court judge's Fed. R. Civ. P. 37(b)(2) sanctions based on an oral magistrate judge ruling entered onto the record). Additionally, the Magistrate Judge Civil Case Management Practices posted on the Court's website clearly indicate the procedure of the discovery dispute process in this district, and states that rulings will be made on the record which would be the basis for appealing any ruling that occurs during the conference. Therefore, the July 29, 2025 Order required Plaintiff to respond to RFA Nos. 10-12, 73, 74, and 146, and this order was an enforceable court order.

Plaintiff additionally argues the Magistrate Judge's threatened dismissal of this case for failing to respond to RFA Nos. 10-12, 73, 74, and 146 was improper. (Filing No. 105 at 5.). However, the October 9, 2025 Order indicates that dismissal would be an appropriate consequence for Plaintiff disobeying the Magistrate Judge's prior order of July 29, 2025 not a consequence for failing to respond to discovery. (Filing No. 101 at 2.) Thus, Plaintiff's failure to comply with the discovery order, for the second time, could authorize the issuance of sanctions, including dismissal of the action. Fed. R. Civ. P. 37(b)(2)(A); *see also Avionic Co.,* 957 F.2d at 558 ("Oral proceedings compelling discovery that 'unequivocally give a litigant notice' of the discovery required are a sufficient basis for Rule 37(b)(2) sanctions").

Plaintiff finally argues that the Magistrate Judge erred in determining RFA Nos. 10-12, 73, 74, and 146 were relevant, and RFA Nos. 10 and 12 were not speculative. (Filing No. 105 at 6-8.)

However, Plaintiff failed to state his objections to the initial discovery rulings on RFA Nos. 10-12, 73, 74, and 146 contained in the July 29, 2025 Order in a timely manner. *See* Fed. R. Civ. P. 72(a) (objections to a magistrate judge ruling must be submitted within 14 days). The Court will not consider the merits of Plaintiff's objections to the July 29, 2025 Order now.

The Court does not find that the Magistrate Judge's ruling on RFA Nos. 10, 11, 12, 73, 74, and 146 was contrary to law or clearly erroneous. Therefore, Plaintiff's objection as to the Magistrate Judge's ruling on RFA Nos. 10-12, 73, 74, and 146 is overruled.

## II.    Interrogatory Nos. 13, 14, 15, 16, and 17

Plaintiff contends the Magistrate Judge erred in allowing Defendants to withdraw Interrogatory No. 12 and ordering Plaintiff to respond to Interrogatories No. 13 through 17. (Filing No. 105 at 13.) Plaintiff asserts that the Magistrate Judge lacked the authority to allow Defendants to withdraw interrogatories, and Defendant served more than 25 interrogatories without seeking leave to serve additional interrogatories or showing good cause for doing so. (Filing No. 104 at 5.)

The Magistrate Judge allowed Defendants to withdraw Interrogatory No. 12 after determining it consisted of multiple subparts. (Filing No. 101 at 4.) The Magistrate Judge then ordered Plaintiff to answer Interrogatories Nos. 13 through 17. (Filing No. 101 at 5.) The parties did not argue or brief whether Interrogatories Nos. 13 through 17 would exceed the 25-interrogatory limit, and, therefore, the Magistrate Judge did not rule on how many interrogatories were contained in Interrogatories Nos. 13 through 17. Instead, the Magistrate Judge granted leave to Defendants to serve additional interrogatories pursuant to Fed. R. Civ. P. 33 to the extent that "Interrogatories Nos. 1 through 11 and 13 through 17 total more than 25 interrogatories[.]" (Filing No. 101 at 5.) The Magistrate Judge noted the interrogatories would total "at most" 35 interrogatories and found this increase in interrogatory numbers was "warranted and consistent with the Federal Rules." (Filing No. 101 at 5.)

Magistrate judges have the authority to permit leave for additional interrogatories and may alter the limits on the rules on the number of interrogatories by order. Fed. R. Civ. P. 33(a)(1) (authorizing district judges to grant leave for additional interrogatories); Fed. R. Civ. P.

7

26(b)(2)(A) (authorizing district judges to alter the limits on the number of interrogatories); 28 U.S.C. §636(b)(1)(A) (extending this authority to magistrate judges).  Magistrate judges retain broad discretion in managing pretrial discovery. *Mehner v. Panera, LLC,* 8:22CV168, 2023 WL 6810277, at *1 (D. Neb. Oct. 16, 2023).  In the context of discovery rulings, "[t]his Court is most unlikely to fault [the magistrate judge's] judgment unless, in the totality of the circumstances, her rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case." *Id.* (quoting *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 353 (8th Cir. 2020)).

Plaintiff does not cite to any authority indicating magistrate judges cannot permit the withdrawal of interrogatories to manage discovery. (Filing No. 105.)  Nor has this Court found any law supporting Plaintiff's proposition.  Instead, Plaintiff appears to argue that the Magistrate Judge's order was unfair or subverted the discovery completion deadline by enabling Defendants to "serve" additional interrogatories after the written discovery deadline without showing good cause. (Filing No. 105 at 12-13.)

The Court disagrees.  Defendants served Plaintiff with its first set of interrogatories, including Interrogatories No. 12 through 17, on April 18, 2025, which was before the written discovery deadline on May 26, 2025.  (Filing No. 93; Filing No. 61 at 2.)  Plaintiff submitted various objections to Defendants' interrogatories, including an objection to Interrogatory No. 12 for exceeding the 25-interrogatory limit.  The Magistrate Judge did not determine whether Interrogatory No. 12 contained multiple subparts until her October 9, 2025 Order.  At that time, the Magistrate Judge allowed Defendants to withdraw Interrogatory No. 12, as alternatively requested by Defendants if Interrogatory No. 12 was found to have subparts.

Allowing Defendants to withdraw an interrogatory, to which Plaintiff had objected, and ordering Plaintiff to respond to the remaining interrogatories, all of which had been initially served before the written discovery deadline, does not appear to "be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case." *Mehner,* 2023 WL 6810277, at *1.  Plaintiff does not explain how requiring him to respond to at most ten additional interrogatories would be unfair, other than to argue that Defendants should have sought leave to serve additional interrogatories sooner to comply with Fed. R. Civ. P. 33.  (Filing No. 105 at 12-13.)  This

8

contention ignores magistrate judges' discretion to manage discovery and district court judges' deference to that discretion, and does not indicate fundamental unfairness in the trial of this case.

As such, this Court does not find that the Magistrate Judge's order on this matter was contrary to law or clearly erroneous.  Plaintiff's objection to the Magistrate Judge's order on Interrogatories Nos. 13 through 17 is overruled.

### III.    Implied Waiver of Attorney-Client Privilege

Plaintiff objects to the Magistrate Judge's order to respond to RFP No. 4 because Plaintiff impliedly waived the attorney-client privilege between Plaintiff and Mr. Catlett.  (Filing No. 105 at 14.)  Plaintiff asserts that the Magistrate Judge "erred in overruling the plaintiff's relevant, not proportional, and attorney-client privilege objections" to RFP No. 4.  (Filing No. 105 at 14.)

RFP No. 4 requested, "All written communication between Plaintiff and the Law Office of Matt Catlett for the litigation between you and [P.K.] that Matt Catlett took over from Defendants, including but not limited to e-mails, letters, texts, billing statements, invoices, and payments." (Filing No. 93-3 at 3.)

Nebraska law governs privilege in this diversity action.  *See* Fed. R. Evid. 501.   In Nebraska, "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications [between the lawyer and the client] made for the purpose of facilitating the rendition of professional legal services to the client." Neb. Rev. Stat § 27-503(2). However, an exception to this privilege exists when (1) the claiming party impliedly waives the privilege by placing the privileged information at issue "through some affirmative act for his own benefit," and (2) allowing the privilege to protect against disclosure of the information would be "manifestly unfair to the opposing party."  *State v. Roeder*, 262 Neb. 951, 957-58, 636 N.W.2d 870, 876 (2001).

A court should find a party has impliedly waived the attorney-client privilege through affirmative conduct when the three following conditions exist: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to

9

information vital to his defense." *Id.* (quoting *League v. Vanice*, 221 Neb. 34, 44, 374 N.W.2d 849, 856 (1985)). "Fairness is an important and fundamental consideration in assessing the issue of whether there has been a waiver of the lawyer-client privilege." *League*, 221 Neb. at 44, 374 N.W2d at 856.

The Magistrate Judge determined Plaintiff impliedly waived the attorney-client privilege because Plaintiff affirmatively put Mr. Catlett's legal services at issue by seeking recovery of the legal expenses he paid to Mr. Catlett and claiming the outcome of the Underlying Litigation, in which Mr. Catlett overtook his representation, would have been different but for Defendants' malpractice. (Filing No. 101 at 6-7.) The Magistrate Judge reasoned that all three *League* conditions existed to support implied waiver through affirmative conduct, and applying the attorney-client privilege would unfairly deprive Defendants of "information vital to defending against Plaintiff's claims." (Filing No. 101 at 6-7.) Plaintiff does not explain how the Magistrate Judge's holding that he impliedly waived the attorney-client privilege was legally deficient. (*See* Filing No. 105).

After reviewing the Magistrate Judge's order, this Court agrees that the three *League* conditions support finding that Plaintiff impliedly waived the attorney-client privilege. Plaintiff asserts the attorney-client privilege because he has filed suit against Defendants, an affirmative act. By claiming damages in the form of legal expenses paid to Mr. Catlett, Plaintiff has put the legal services provided by Mr. Catlett at issue in the case by making Mr. Catlett's legal services relevant to damages. Plaintiff has additionally put Mr. Catlett's legal services at issue by claiming that but for Defendant's malpractice, the outcome of the Underlying Litigation, in which Mr. Catlett represented Plaintiff, would have been different. Denying Defendants access to information regarding Mr. Catlett's legal services and the valuation of those services would deny Defendants access to information vital to assessing Plaintiff's claim for damages and the merits of his malpractice claim.

Plaintiff argues the Magistrate Judge erred in finding that RFP No. 4 was relevant and proportional because RFP No. 4 is not relevant to any claim or defense. (Filing No. 105 at 16.) However, the Magistrate Judge stated RFP No. 4 was relevant and proportional for the very reasons the attorney-client privilege had been impliedly waived. (Filing No. 101 at 7.) The Magistrate

10

Judge ruled that the billing statements, invoices, and payments requested by RFP No. 4 were relevant because "Plaintiff seeks to recover from Defendants the amounts Mr. Catlett billed him in the Underlying Litigation." (Filing No. 101 at 7.) Similarly, "[c]ommunications between Plaintiff and Mr. Catlett [were] relevant because Plaintiff alleges the outcome of the Underlying Litigation would be different but for Defendants' malpractice." (Filing No. 101 at 7.)

Plaintiff does not address how the Magistrate Judge's legal basis for finding relevance and proportionality was deficient, and instead focuses on the arguments for relevance and proportionality made by Defendant in their previously submitted Brief in Support of Motion to Compel (Filing No. 90). (*See* Filing No. 105.) These arguments were not relied upon by the Magistrate Judge in her order.

The Court agrees with the Magistrate Judge that RFP No. 4 seeks relevant and proportional information. Plaintiff made Mr. Catlett's legal services during the Underlying Litigation relevant by seeking damages in the form of recompense for Mr. Catlett's legal services and claiming that the outcome of the Underlying Litigation, in which Mr. Catlett overtook Plaintiff's representation, would be different but for Defendant's actions. RFP No. 4 is also appropriately limited to the services rendered in the Underlying Litigation.

Therefore, because Plaintiff impliedly waived attorney-client privilege and RFP No. 4 is proportional and seeks relevant information, the Magistrate Judge's order was not contrary to law or clearly erroneous. Accordingly, Plaintiff's objection is overruled.

## IV.    Mediation Privilege and Custody Arrangement Agreed Upon in Mediation

Plaintiff objects to the Magistrate Judge's order to respond to RFA Nos. 16 and 19 and ruling that Plaintiff was precluded from asserting the mediation communication privilege.

As stated previously, Nebraska law governs privilege in this diversity action. *See* Fed. R. Evid. 501. Under Nebraska's Uniform Mediation Act, mediation communications are generally privileged and not subject to discovery unless an exception applies, the privilege is waived, or a person is precluded from asserting the privilege under Neb. Rev. Stat. § 25-2934. Neb. Rev. Stat. § 25-2933(a); *Shriner v. Friedman L. Offs., P.C., L.L.O.*, 23 Neb. App. 869, 894, 877 N.W.2d 272, 290 (2016). A person is precluded from asserting the privilege when they disclose or make a

representation about a mediation communication that "prejudices another person in a proceeding . . . but only to the extent necessary for the person prejudiced to respond to the representation or disclosure." Neb. Rev. Stat. § 25-2934(b).

Defendants' RFA No. 16 requested Plaintiff admit he agreed to a temporary parenting schedule while he was at mediation. (Filing No. 93-4 at 5.)  RFA No. 19 requested Plaintiff admit "the Melanie Kirk, Esq. letter dated April 17, 2020" describes the agreement he reached during the mediation. (Filing No. 93-4 at 6.)

The Magistrate Judge held that Plaintiff was precluded from asserting the mediation communication privilege under Neb. Rev. Stat. §25-2934(b).  (Filing No. 101 at 8.)  Plaintiff attended mediation with P.K. in April 17, 2020 without Defendants present as counsel. (Filing No. 93-5 at 6.)  Afterwards, Melanie Kirk emailed a letter to P.K.'s counsel and Defendants, allegedly summarizing the agreement reached during mediation.  (Filing No. 93-4 at 45.)  Plaintiff alleges the Court in the Underlying Litigation entered an order setting forth a temporary custody arrangement based on the agreement of the parties. (Filing No. 67 at 5.)  Plaintiff asserts he did not agree to the custody agreement, but Defendants still signed the order. (Filing No. 67 at 5.)  Based on these circumstances, the Magistrate Judge concluded that Plaintiff was precluded from asserting the mediation communication privilege "avoid answering whether or not he agreed to a certain custody arrangement during the mediation[,]" and found that RFA Nos. 16 and 19 were "sufficiently limited to the extent necessary to allow Defendants to respond to Plaintiff's allegations." (Filing No. 101 at 8-9).

Plaintiff's brief focuses on Defendants' previously submitted Brief in Support of Motion to Compel (Filing No. 90) and the Defendants' two arguments therein that (1) the requests did not seek to discover mediation communications as defined by Neb. Rev. Stat. § 25-2931, and (2) Plaintiff waived the mediation privilege under Neb. Rev. Stat. § 25-2935(a)(1).  (Filing No. 105 at 21-24.)  However, in the October 9, 2025 Order, the Magistrate Judge specifically declined to determine whether the requests sought mediation communications and did not determine whether Plaintiff waived the mediation privilege.  (See Filing No. 101 at 8-9.)  Indeed, the Magistrate Judge ruled the mediation communication privilege did not apply on a different basis: Plaintiff was precluded from asserting the privilege due to the prejudice the privilege would cause Defendants.

12

(Filing No. 101 at 8.)  Plaintiff does not address this distinct legal issue in his brief.  (*See* Filing No. 105.)

Regardless, after reviewing the October 9, 2025 Order, this Court concludes that the Magistrate Judge's ruling was not clearly erroneous or contrary to law.  Core to Plaintiff's claim of legal malpractice against Defendants is that he did not agree to the temporary custody arrangement, but Defendants still signed the order adopting this agreement in the Underlying Litigation.  (Filing No. 67 at 5.)  RFA Nos. 16 and 19 simply request Plaintiff to verify whether he agreed to the temporary custody arrangement during the mediation and verify the document containing the temporary custody arrangement reached at the mediation.  (Filing No. 93-4 at 5-6.)  Disallowing Defendants from using discovery to verify Plaintiff's claims in the Complaint would prejudice Defendants.  As such, the Magistrate Judge's order was not contrary to law or clearly erroneous, and Plaintiff's objection is overruled.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff Christian L. Gilbert's Statement of Objections to Magistrate Judge's Order (Filing No. 104) is overruled.

2. The Magistrate Judge's Orders (Filing No. 101; Filing No. 80) stand in their entirety.

3. This matter is referred to the Magistrate Judge for case progression.

Dated this 1st day of June, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge

13